## SMITH *v.* SHELTON.

[91 South. 691. No. 22584.]

1. LANDLORD AND TENANT. *Lease held not to entitle leasee to exercise option to renew after notice to vacate.*

   Where a landlord leased a place for a fixed period, with a clause providing, "Both the party of the first part and the party of the second part shall notify the other party within sixty days of the termination of the lease if for any reason it cannot be renewed for one or more years," does not give the lessee a right to hold over against notice to vacate, made sixty days before the date of the expiration of the lease; nor does the fact that the lessor wrote a letter, stating that the lessee had an option to renew, give such right, unless exercised before a notice to vacate was given by the lessor.

2. LANDLORD AND TENANT. *Lessee, who holds over after expiration of lease notwithstanding notice to vacate, liable for double rent.*

   Where a person leases a house for a fixed term, and where the tenant is given notice to vacate at the end of his term, but held over, the tenant becomes liable for double rent; and where another lessee is kept out of possession by such wrongful holding over, such latter lessee may recover double rent for the period he is kept out of possession.

APPEAL from circuit court of Humphreys county.

HON. S. F. DAVIS, Judge.

Action by W. S. Smith against W. L. Shelton. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

*H. F. Jones,* for appellant.

Appellee, in his brief, propounds a question as to the meaning of the language: "Both the party of the first part and the party of the second part shall notify the other party within sixty of the termination of lease if by any reason that it cannot be renewed for one or more years."

Substituting the grammatical word "either" for the word "both," which is an ungrammatical use of the word, and inserting the word "days" after "sixty," we have 'either the party of the first part" and "or the party of the second part shall notify the other party, etc." We have the obvious intent of the parties to the contract, and there is no ambiguity. By no strength of the language can it be interpreted or construed to give any right to the lessee, Shelton, in the property after the expiration of his term.

Appellee further asks the reason for such a clause, but this is aside from the question of construction, however in answer to this query I will say that Edwards doubtless desired to know sixty days before the expiration of the lease whether Shelton would desire to have another lease, so that he might supply another lessee at the expiration of the term. Shelton, on the other hand, doubtless desired to know sixty days before the expiration of the lease if he would have to vacate the property so that he might obtain another garage at the expiration of the lease.

Not a syllable in the contract obligates Edwards to release to Shelton, nor Shelton to release from Edwards. The consequences of a violation of the notice obligation on the part of either may have furnished the basis for a suit for damages, but furnished no obligation on the part

128 Miss.—57.

of either to continue the lease, or to renew the contract relative to the property. Nothing is plainer; construction cannot make it plainer; and the construction, if it was construction, made by Edwards in the absence of the contract in his letter to Shelton under date of December 20, 1920, adds nothing to the contract. Edwards was mistaken when he stated that Shelton had sixty days within which to notify him (Edwards) whether he desired to renew the lease at the same price.

Edwards gave the notice required to Shelton, however, so far as the lease between the parties or its legal *status* goes, the notice was unnecessary to require of Shelton payment of double rent under the statute and the proof in the case. The lease expired on a day fixed by the contract, and no notice was required by the statute to fix double rent upon Shelton for three months he held over after its expiration.

Appellee could claim no advantage on account of the letter above mentioned for the several reasons that he had a copy of the contract, and cannot deny knowledge of its terms; and if the letter proposed other terms than those expressed in the contract, they were without consideration; besides as soon as Edwards learned the true terms of the contract, he notified Shelton to vacate; and after showing him every reasonable consideration and forbearance, he corrected his letter, gave the notice contracted for, within the time, and revoked his written statement before Shelton ever accepted it.

There was no tender of any rent whatever by Shelton to Edwards, he sent some checks which Edwards sent back because he was demanding the double rent provided by law, and to which he, under the law, was entitled. If appellant be a Shylock as briefed by appellee, he may take his pound of flesh without the shedding of Christian blood in so doing, because if fault there is in the demand, it is the fault of the lawmaker, and I find no fault therein, since it is the law of the state, and there is no reason for his taking a pound where he is entitled to two. He was as

diligent as the law required him to be or the contract by which they were mutually bound, there being fully sixty days and more between the date of the notice to Shelton, and the date of the expiration of the term.

The judgment of the court in view of the case of *Stollenwerck* v. *Eure,* 81 So. 594, clearly was in error when this cause was dismissed, as proof of the fact that appellee was holding over after the expiration of the term was clearly shown; that he held over for three months, thereby incurring the rental of three hundred dollars and it being shown that appellee's term was set forth in the contract and was well known to him, no notice was required to incur double rent for holding over, and this is true without any regard to the notice provided for under the lease, since such notice had no reference to the term, and obligated neither party to an extension of the term.

Shelton made no tender that amounted to a legal tender of any sum whatever, and is therefore bound for the full amount of single rent, double rent, and all costs herein.

*C. M. Murphy,* for appellee.

Appellant insists first, in speaking of the Edwards-Shelton lease (page 3, his brief) that: 'The term of lease was specific, clear and not subject to construction, as the terms are very clear and unequivocal. It is for a period of two years dating from April 1, 1919, and therefore expired on April 1, 1921.

And second, he seems to rely upon the proposition that if the interpretation placed upon the contract by Edwards in his letter of December 20, 1920, is binding upon him and he is not entitled to his double rent, then the court erred in not granting him single rent for the three months during which the building was occupied by appellee.

## I.

*The Contract Was Ambiguous.*—To demonstrate the ambiguity of the contract which counsel states was so clear

and unequivocal in its terms as to not be susceptible of construction, we desire to quote this sentence: "Both the party of the first part and the party of the second part shall notify the other party within sixty of the termination of lease if by any reason that it cannot be renewed for one or more years.".

What does this mean? Upon its construction depends the outcome of this lawsuit. If, as counsel says, it is so clear to him, it is not so with us, and for our enlightenment and that of the court, we will propound to him the following questions as to its meaning: 1. If neither Edwards nor Shelton had given any notice to the other, sixty days or more before its expiration, would the contract have been automatically extended as suggested on page 3, near the bottom of appellant's brief, and contradicted in his conclusion on page 7? 2. If his answer is that it would have been extended automatically, then for how long and what length of time? Three months? Six months? One year? Or five years? 3. And upon what terms and how payable? 4. If the contract would not have been automatically extended or renewed, in the absence of any notice of any kind from both parties, to the other, but would have terminated or expired on the day named herein, to-wit, April 1, 1921, then for what earthly reason, in the name of goodness, was this sentence inserted into this contract—which, let it be remembered, was wholly written and prepared by Edwards? 5. Does counsel seriously contend that it was mere surplusage, placed there for ornamental purposes or the sake of courtesy, and otherwise meaningless? 6. Let us assume that Shelton had notified Edwards that the contract could not be renewed for two years but could for one, and Edwards had notified Shelton that it could not be renewed for one year, but could for two, what then? And *vice versa*, is the contract plain and unequivocal? We say, No. On its face and without more, it positively is not.

But when we interpret this objectionable sentence, (because of its ambiguity) in the light of the construction

placed upon it by its author in his letter of December 20,
1920, in which he states: "Your lease expires on April 1,
1921, and you have sixty days before the expiration of lease
to notify me whether or not you desire to renew it at the
same price, and I cannot do anything until you send such
notice, how the mist clears away. Nowhere else in his tes-
timony does Edwards attempt to explain what this sen-
tence meant, so is not the court justified in relying, as
did Shelton, upon the interpretation of Edwards.

"When contracts are of a doubtful meaning, the con-
struction which the parties have placed upon it will be
adopted by the courts." Am. Digest (Dec.) Contracts, 170
(1) a. "Where a contract is ambiguous, the court may
look to the construction which the parties have placed
upon it in order to ascertain its true meaning." *Spengler*
v *Stiles, Tull Lumber Company,* 94 Miss. 780, 48 So. 966,
19 Ann. Cas. 426; *Humphreys* v. *McFarland,* 48 So. 1027,
101 Miss. 161; *Jones* v. *Farm Co.,* 116 Miss. 295, 76 So.
880.

And add to that the fact that the contract here in question
was drawn up and prepared by Edwards, and the general
rule of law that an instrument will be most strictly con-
strued against the party by whom it was written, it would
seem that the trial court but followed the law in constru-
ing the contract as did Edwards, and holding that Shelton
was entitled to remain in the building. "A lease prepared
by the landlord must be construed most strongly against
him." *Thos. Hinds Lbr. Co.* v. *Pres. Church,* 103 Miss.
130, 60 So. 66; *Home Fire Ins. Co.* v. *Townsend,* 111 Miss.
420, 71 So. 739.

The suggestion in appellant's brief that the ambiguous
sentence was nothing more than a mere courtesy which
both parties agreed to exercise in case there should occur
or exist any reason why the terms might not be extended,
is an ingenuous attempt, worthy of the sagacity and re-
sourcefulness of counsel, to escape the very plain construc-
tion or understanding which Edwards had of the contract.
The mere fact that Edwards says he did not have the con-

tract before him when he wrote that letter on December 20, 1920, can be no excuse, for he it was who drew up the contract, while Shelton, on the other hand, had never seen his copy and did not know what was in it at that time. Was he not therefore entitled to rely upon Edwards' statement in his letter of 12/20/20 as to his rights under the contract? Can Edwards be permitted to play fast and loose with Shelton by placing one construction on the contract at one time, and another and entirely different one on it every time thereafter that the impulse strikes him or he consults a lawyer? It is true the general rule of law is that an option to renew must be in plain, clear terms, but taking this ambiguous contract and the plain and clear interpretation of it by Edwards in his fatal letter, and we ask what could be any more clear than that?

We therefore submit that the evidence was sufficient for the court below, a jury being waived, to construe the contract according to its meaning as accepted by Edwards, and that this court should not here disturb that finding.

## II.

*Appellant not Entitled to Judgment for Rent.*—If the court agrees with us in this main proposition, then that would, of course, eliminate any discussion or question as to double rent, since assuredly, if appellee was rightfully in possession, he could be asked to pay only the rent due under the contract.

We take it that it was not incumbent upon appellee to tender and continue to tender payment of his rent, when it appears that Edwards arbitrarily and unconditionally refused to accept payment sent promptly as usual and customary between them. The law never required the doing of a vain thing. Then, too, we call the court's attention to the fact that this was not an action for rent in the beginning, since no rent was then due, and nowhere in the pleadings filed is there any indication or suggestion or

hint that any rent or double rent would be asked. Even though it may be the law that evidence of rent accrued since the commencement of the action in the justice court and up to the time of the trial in the circuit court, may be introduced, and such rent recovered in proper cases in a proceeding of this kind, nevertheless we respectfully urge that it is not the only remedy by which such rent can be recovered; and it is therefore not incumbent upon a defendant in such an action as this to anticipate what or whether such evidence will be offered and such rent claimed in that action or another. And, this being true, since the privilege of making a tender is allowed only, "before trial," under section 771 of Hemingway's Code which provides: "The defendant in any personal action . . . may offer with his plea or in writing afterwards, before trial, and pay into court, etc."

A defendant might come in and successfully defend as to the main action of possession, and nevertheless, by the late introduction of such evidence and the claim for rent admittedly due and tendered, have the costs of the whole proceeding unjustly placed upon him, and this in spite of the fact that the rent properly due had actually been tendered to plaintiff at the proper time, and in spite of the fact that plaintiff by his repeated refusal to accept such rent was the direct cause of the accrual of such costs. This would be a most harsh rule, and the mere relic of an archaic procedure when judicial hairsplitting was in fashion. The trial court, in accordance with the broader and more enlarged modern view, as opposed to the technicalities and splitting of hairs of old, most wisely and equitably decided to leave the plaintiff in the court below to his remedy for recovery of his rent, but should this court hold that a judgment for the three hundred dollars should be entered against appellee, then we most respectfully ask that the costs in this cause be taxed against appellant, or at least assessed in such manner as to the court may seem fair and equitable.

ETHRIDGE, J., delivered the opinion of the court.

The appellant leased a building from one R. L. Edwards in which the appellee was doing business under a lease expiring April 21, 1921, which lease of the appellee contained the following clause:

"Both the party of the first part and the party of the second part shall notify the other party within sixty days of the termination of the lease if for any reason it cannot be renewed for one or more years."

The appellant's lease was made to begin on April 1, 1921, the time that the appellee's lease ended, but the appellee contended that the above-quoted clause gave him an option of renewing the lease which he claimed to have exercised on January 27, 1921, in a letter to the said R. L. Edwards. The facts involved in the controversy with reference to the lease between Edwards and the appellee were as follows: In December, 1920, the appellee wrote Edwards a letter, stating that he did not see his way clear to pay rent at one hundred dollars per month for a longer term than the present lease, and that on account of conditions then existing he would have to close his business, unless he could curtail expenses approximately fifty per cent. Edwards replied that he did not see his way clear to reducing the rent, but stated in his letter to Shelton that Shelton had the lease option on the premises, and that he could not make any arrangements until he notified him whether he would exercise the option or not. Subsequent to this letter, to-wit, on January 5, 1921, Edwards wrote Shelton the following letter:

"You will take notice that at the expiration of your lease of the building occupied by you in the town of Belzoni, to-wit, the house on lot 70 of the Briley addition to the town of Belzoni, expiring on the 1st day of April, 1921, I will terminate the said lease, and have leased the said property to another party to take effect upon that date. You will please deliver the said property at the date of expiration."

Which letter was given to the agent of Shelton at the leased premises, and a copy mailed to Shelton at his post-office address at Greenville, Miss. This letter was not replied to, but on the 27th of January, 1921, Shelton wrote Edwards the following letter:

"This is to advise you that we desire to exercise our option to renew for one year from April 1, 1921, our lease of the garage now occupied by us in Belzoni, said lease having been on April 1, 1919, for a term of two years.

"In your letter of December 20, 1920, you advised us that we have sixty days before the expiration of the lease to notify you whether or not we desire to renew the lease at the same price, and that you cannot do anything until we serve notice as to whether or not we desire to renew the lease:

"This notice is being given as our desire to renew the lease for one year, so that you may be advised, in accordance with the contract and your letter above mentioned, that we now exercise our option to renew for one year said lease upon the terms of the original lease."

To which letter Edwards replied as follows:

"In reply to your letter of recent date, handed me by Mr. Bradley on the day before yesterday, which is not dated, I would respectfully refer you to my notice to you of the 5th day of January, in which I gave you notice that I would require the surrender of my building in the town of Belzoni on April 1, 1921.

"I respectfully call your attention to the contract, and urge that it is not an option to renew the contract, but parties to it agree therein to observe the courtesy of notice should there be a reason for not renewing it. I notified you by posting a notice to you in the mail on the 5th day of January, also I handed a notice to Mr. Bradley, your agent here, and I repeat the notice by this letter, that I cannot renew your lease upon the building because I have consummated a lease to other parties.

"Hoping that this will be satisfactory to you, and that you will vacate the building upon the 1st day of April, 1921, as that is the date of the expiration of your lease.

"I register you this letter, and deliver a copy of same to Mr. Howard Bradley, your agent here."

To which Shelton replied, reiterating his determination to exercise the option, and that he was not going to surrender. Edwards leased the property in question to the appellant, Smith, on the 5th day of January, 1921, the term to begin on April 1, 1921, and run until the 1st of January, 1922. On April 1, 1921, Shelton refused to vacate, and Smith brought a proceeding before a justice of the peace for the possession of the property. There was a judgment in the justice court for Smith, and an appeal by Shelton to the circuit court, where the case was submitted on agreement to the circuit judge without a jury, who found for Shelton, denying to Smith the right to recover rents, Shelton having vacated the premises on the 5th of July, 1921, and having tendered to Edwards by check the rent of one hundred dollars for each month from April 1, 1921, to July 1, 1921, which had been refused by Edwards. The plaintiff contended for double rent for this period of holding over by Shelton.

We have carefully considered the contracts and the correspondence in reference thereto, and in our opinion Shelton had no option to continue the lease beyond the expiration of his term. Under the clause above quoted from the contract, either party must notify the other sixty days before the expiration of the term if they did not expect to continue the lease. However, Edwards notified Shelton prior to that time that he had leased the property to the appellant, Smith. This notice was reiterated on January 27, 1921, as shown by the letter set out above. Edwards had the same right under this contract that Shelton had, and either was at liberty to terminate the contract at any time prior to sixty days from the expiration thereof. This being true, and the appellee holding over after notice to vacate, he became liable to double rent. *Stollenwerch* v.

*Eure,* 119 Miss. 854, 81 So. 594; *Pinnix* v. *Jones* (Miss), 90 So. 481.

The judgment of the court below will therefore be reversed, and judgment entered here for the appellant Smith, for two hundred dollars per month from April 1, 1921, to July 1, 1921.

*Reversed and rendered.*